STEPHEN D. HOLT *versus* INHABITANTS OF PENOBSCOT.

In an action on the case for an injury occasioned by a defect in a highway in the defendant town, the plaintiff's declaration alleged, *inter alia,* that said "highway was so defective and out of repair and amendment, by reason of an insufficient and defective causeway, — said causeway having broken down near the end, — thereby obstructing the flow of the water, causing a large accumulation of ice on and near said causeway, and the earth to be gullied out on one side thereof, that in passing upon said road and around said defect and causeway, the wheel of the plaintiff's wagon broke through the ice," and the plaintiff was thrown from his wagon and injured, and that the defendants had notice "of said defect, obstruction and want of amendment as aforesaid." The proof as to the obstruction of the water was, not a breaking down, but a depression of one end of the causeway occasioned by the inadequate capacity of the culvert to discharge the water flowing there, and the consequent accumulation of ice under and upon it; *Held,*

1. That there was no variance as to the obstruction;

2. That the parenthetical clause might be rejected as surplusage;

3. That, as matter of description, it is not essential in ascertaining the identity of the cause of action; and

4. That, not the insufficient and defective causeway only, but the accumulation of ice through which he broke and the condition of the road, both in and out of the travelled path, are complained of as the defect causing the injury, and of which it is alleged the defendants had notice.

Notice of a defect in a highway may be inferred from the length of time during which the defect has existed.

And the state of the weather and its natural effect upon the ice over which the public have travelled, are proper matters for the consideration of the jury upon the question of notice.

ON EXCEPTIONS.

CASE, for an injury caused by an alleged defect in a highway in the defendant town.

So much of the declaration and evidence supporting the same as is essential is recited in the opinion.

The presiding Judge instructed the jury, *inter alia,* that they were to consider whether there was any defect in the culvert; that the plaintiff was not confined to his allegations as to the obstruction being caused by the breaking down at one end; that the essential allegation was that the way was unsafe and inconvenient, and made so by a defective and in-

sufficient culvert; that plaintiff was not precluded from proving the allegation, if he did not show that the defect in the culvert was caused by the breaking down of the covering; but that he must prove the essential allegations.

On the question of notice, the presiding Judge instructed the jury that the *onus* was upon the plaintiff; that they might infer it from circumstances and facts proved, if sufficient; and that the state of the weather might be considered in this connection by them. That they must determine whether there was such a defect in the way as is alleged, and which caused the injury, and if so, whether the town had notice of it. If the town had reasonable notice before the injury of the defect in the culvert or causeway which prevented the water from flowing and caused it to overflow and form ice, then the town must be held to have notice of what immediately and naturally followed and resulted from such defect in the culvert by way of ice and water; and if the ice and gully, and the ice where the accident happened, were such immediate and natural result, the town must be held to have notice of the actual condition of the highway at these points in those particulars.

The verdict was for the plaintiff, and the defendants alleged exceptions.

*Rowe* and *C. J. Abbott*, for the defendants.

*Wiswell*, for the plaintiff.

BARROWS, J. — The plaintiff, in his writ, after alleging the existence of a public highway in the defendant town, leading from the house of John Hutchings to Mark's corner, and the duty of the town to repair the same, and keep it safe and convenient, in the usual form, goes on to aver that " on the 4th day of April, 1866, as his wagon, drawn by three horses, was passing along upon said road, at a point about one-third of the distance from said John Hutchings' house to said Mark's corner, and near a causeway, being carefully and prudently driven and directed by one Kilborn

Blaisdell, said highway or travelled road was so defective and out of repair and amendment, by reason of an insufficient and defective causeway, — said causeway having broken down near the end, — thereby obstructing the flow of the water, causing a large quantity of ice to accumulate on and near said causeway, and causing the earth to be gullied out on one side of the said causeway, that, in passing along upon said road as aforesaid, and around said defect and causeway, there being no other passage-way, the near forward wheel of the wagon broke through the ice, throwing the plaintiff out," &c. He here describes the injuries received and then avers that " said defect, obstruction and want of amendment as aforesaid, were known to .the inhabitants of the town of Penobscot," and that the defendants " had due notice that said obstruction and defect had existed in said highway or travelled road for a long time."

The testimony shows that, at the place indicated, where the highway running east and west crosses a low and flat piece of land lying between two ledges, the wrought part of the road had not been built up, but a causeway was laid with a culvert constructed of poles and not high nor wide enough to discharge the water which flowed there, and there was no ditch to drain the water off at the sides of the road which was consequently overflowed at the causeway, — that a hole had been cut at the south end of the culvert which was used as a watering place for cattle and horses, — that, for nearly a hundred feet, the road had been covered with ice, and the winter travel, after the first of January, had mostly gone to the south of the culvert and the summer travelled track, and between it and the fence, a few only passing on the north side and none over the culvert itself. The reason for this deviation was the condition of the causeway and culvert, as affected by the accumulation of ice there.

One witness, whose testimony seems to have been fairly and intelligently given, says, " the ice near the culvert had bulged up for five or six feet across it and two or three feet

high,"—"the ends of the logs of the culvert were lifted up and the culvert was somewhat depressed; the water was stopped and could not flow through; it had been so for three or four months."

Other witnesses describe the causeway and culvert as impassable by reason of being so icy and "sideling," and "slewy." At the time of the accident, added to these difficulties, some ten or twelve feet beyond the culvert, eastwardly, there was a channel or gully in the ice eighteen inches wide and as many deep, with water in it "extending two-thirds or three-fourths across the causeway."

It is quite manifest that such a dangerous pass as this is not to be reckoned in the category of ordinary bad roads "in the spring when the snow and ice are disappearing," in which the counsel for defence are so desirous to place it, nor was it strange that wayfarers should betake themselves to the flat lands at the sides of the causeway, between it and the fences which bounded the road. This the plaintiff did, following the track then usually travelled, the horses proceeding at a walk. But it would seem that the water which should not have been allowed to accumulate there had been working a passage for itself beneath the ice, and while the wagon was thus off the causeway, one wheel broke through the ice, the wagon-stake which supported the plaintiff gave way and he fell off sidewise and suffered bodily injury.

It will be noticed that what is said in the declaration about the causeway "having broken down near the end, thereby obstructing the flow of the water," is not sustained by the proof. It was not a breaking down of one end of the culvert, but a depression consequent upon the tilting up of the other end by the accumulation of ice arising from the welling out of the water from the hole cut for a watering place, and the inadequate dimensions of the culvert which "obstructed the flow of the water."

Upon this point the instructions of the presiding Judge to the jury substantially were that, as to the defect, the plaintiff was bound to prove his essential allegations and that

these were, that the way was unsafe and inconvenient, and made so by a defective and insufficient culvert, but that he was not confined to proof that the obstruction was caused by a breaking down of the poles or covering at one end. To this the defendants except.

But we think that the parenthetical statement of a supposed cause of the obstruction of the water in the culvert is so far immaterial that it may be rejected as surplusage, leaving untouched the essential allegation of " an insufficient and defective causeway * * * causing a large quantity of ice to accumulate," &c.

The statement is certainly no more descriptive than that in *Dukes* v. *Gostling*, 27 E. C. L. R., 499, where the charge was the wrongfully depriving the plaintiff of the water in his pond by digging a sewer through the defendant's close used as a road. The defendant's close was not used as a road at the time of the wrongful act complained of, and his counsel objected that the injury proved, did not correspond with the one described; but the objection was overruled, TINDAL, C. J., remarking as follows : — " What has it to do with the wrongful act of the defendant or the measure of damages which the plaintiff is entitled to claim whether the defendant used his close as a road, an orchard, or a garden ?"

What does it matter here, if the road was unsafe and inconvenient at the place indicated in the declaration by reason of an insufficient and defective culvert causing an accumulation of ice, whether one end of the culvert was broken down or only depressed by tilting the other end up? Where immaterial allegations are required to be proved as laid, it is because they are of such a character as to be important in ascertaining the identity of the thing which is the cause of action. Manifestly the allegation under consideration is not of that class. The defendants could not be misled in the preparation of their defence by any such statement, nor can it be truly said that the record does not show the specific thing which was in controversy. What the defendants were required to meet, so far as this point

was concerned, was the charge that the road was unsafe by reason of an extraordinary accumulation of ice caused by a defective and insufficient culvert. This charge might well be and actually was established without proof of the breaking down at one end, and consequent obstruction of the flow of water.

The requirement of the law, that the matter offered in evidence shall be legally identical with that alleged in the pleadings, was fulfilled. The proof offered had the same legal force and effect as if it had appeared that the flow of water had been impeded in the precise manner suggested. See, on this point, *Ware* v. *Gay*, 11 Pick., 106.

That the insufficiency of the culvert was the primary cause of the obstruction and difficulty, is abundantly established by the testimony of the district road surveyor called by the defendants, in which it appears that there had been much complaint before this time, that the culvert was too low, — " the teamsters wanted it raised years before, — and that he made it higher and wider, and ploughed a channel through the adjacent field to drain the water off a month or two after the accident, since which repairs it was proved that there had been no accumulation of ice or water there. The immediate cause of the accident, however, was the accumulation of ice, which (while it drove the traveller off from the "sidling," "slewy" culvert,) having been weakened by the warm weather made the passage-way over which the winter travel had gone equally unsafe. And hereupon defendants' counsel complain that plaintiff did not allege and prove the defect which was the direct and immediate cause of the injury, and notice to the town of its existence, and that he was not required to do so, but was suffered, as they assert, to recover his verdict upon allegation and proof only of the existence of the primary and indirect cause of the accident, the insufficient culvert and notice to the town of its condition. If it were really so, we should, perhaps, be slow to disturb the verdict for the sake of any such subtle refinement. See *Tuttle* v. *Inhabitants of Holyoke*,

6 Gray, 447; *Worster* v. *Proprietors of the Canal Bridge,* 16 Pick., 541.

But this complaint has for its sole basis a division, more ingenious than just, of what is designed to be, and in fact is, simply a description of one wretchedly defective piece of road and its causes and consequences, into distinct averments of separate defects in and out of the travelled path which perhaps might have been, logically speaking, more correct, but practically no more intelligible than the form adopted. It is not indispensable that the plaintiff should state his cause of action with syllogistic accuracy. If bad grammar does not vitiate a declaration, other faults of style ought not to have that effect, unless they produce such a degree of obscurity as to give rise to the belief that the tribunal before whom the cause is heard might be misled as to the true issue.

But, on recurring to the declaration in this case, it is plain that, while the pleader speaks of the road as being "so defective and out of repair and amendment, by reason of an insufficient and defective causeway," * * "causing a large quantity of ice to accumulate on and near said causeway," and "the earth to be gullied out on one side of said causeway," and of the plaintiff's "passing around said defect and causeway," it is not the cause alone, but the consequence, — not the insufficient and defective causeway only, but the accumulation of ice through which he broke and the condition of the road there, both in and out of the travelled path, that he complains of as the defect causing his hurt, and that this is the "defect, obstruction and want of amendment" of which he says the inhabitants of the town had notice. No jury could have failed to understand that, in order to justify a verdict against the town, they were to find not only an insufficient and defective culvert, and knowledge of its condition by the inhabitants of the town, but also an obstructed and unsafe way, made so by the defect in the culvert, with notice to the town of the obstruction and of the condition of things which was the direct cause of the injury.

We do not perceive any error in the instructions touching this part of the case. Notice may be inferred from the length of time during which a defect has existed, and the state of the weather, and its natural effect upon the ice over which the winter travel had gone, were proper matters for the consideration of the jury.

And we are not prepared to say that the jury erred in finding notice of a defect in the way there, when warm weather for several days had been weakening and gullying the unwonted and dangerous accumulation of ice caused by the defective culvert.

Stover testifies that he broke the ice down the day after the accident in about ten minutes time, and after he had done this there was no trouble in getting along if one was careful.

The town is properly held responsible for the negligence of those who should have done this ten minutes work before.

The case does not differ in its essential features from *Savage & ux.* v. *Bangor*, 40 Maine, 176.

*Motion and exceptions overruled.*

APPLETON, C. J., KENT, DICKERSON and DANFORTH, JJ., concurred.